1
2
3
4
5
6
7
8

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11               **SAN FRANCISCO DIVISION**

12

13  NEN THIO, TJU TJIN LIEM and DENNY       Case No. 12-cv-05756 NC
    WIJAYA, individually and on behalf of all
    others similarly situated,              **ORDER GRANTING**
14                                          **PRELIMINARY APPROVAL OF**
                                            **SETTLEMENT**
15            Plaintiffs,
                                            Re: Dkt. No. 37
16      v.

17  GENJI, LLC, GENJI RETAIL SUPPORT,
    INC., GENJI, INC. and Doe 1 through and
18  including Doe 10,

19            Defendants.

20      Plaintiffs move for preliminary approval of the settlement of this putative class

21  action and collective action.  Because plaintiffs have made a sufficient showing for the

22  purposes of preliminary approval, the Court grants their motion.  The Court also

23  conditionally certifies a class action and a collective action for purposes of the settlement

24  and approves the proposed notice to the class.

25                      **I. BACKGROUND**

26  **A.    Plaintiffs' Allegations**

27      Plaintiffs Nen Thio, Tju Tjin Liem, and Denny Wijaya are individuals who were

28  employed by defendants Genji, Inc., Genji Retail Support, Inc., and/or Genji LLC

1   (collectively, "Genji").  Dkt. No. 5-1 ¶ 1.  Genji is a retail provider of sushi and Japanese

2   cuisine.  *Id.* ¶ 5.  Genji sells its sushi and Japanese cuisine through supermarket sushi bars at

3   Whole Foods Markets in the State of California and elsewhere throughout the country.  *Id.*

4   At the Whole Foods stores, Genji employs Sushi Chefs which are referred to by Genji as

5   Sushi Team Members.  *Id.* ¶ 15; Dkt. No. 38 ¶ 3.  One of the Sushi Chefs also works in the

6   capacity of an in-store "manager," also referred to as Sushi Team Leader or Store Team

7   Leader.  Dkt. Nos. 5-1 ¶ 6, 10; 38 ¶¶ 4-6.  The Sushi Team Leader has some minimal

8   managerial responsibilities and was historically paid a salary rather than hourly wage.  *Id.*

9       Plaintiff Nen Thio worked for Genji from May 2010 through March 2012.  Dkt. No.

10  5-1 ¶ 6.  As a Genji employee, Thio worked as both a Sushi Chef and a Sushi Team Leader

11  at various Whole Foods Markets throughout the San Francisco Bay Area, preparing and

12  selling sushi and other Japanese cuisine.  *Id.*  In addition to making sushi for sale, Thio and

13  his fellow employees would cook and clean their designated area within the store.  *Id.* ¶ 7.

14  In his capacity as a Sushi Chef, Thio worked approximately 40 to 55 hours per week.  *Id.* ¶

15  8.  In his capacity as a Sushi Team Leader, Thio worked 50 or more hours per week.  *Id.*

16  During his tenure as a Sushi Chef, Thio was paid an hourly wage ranging between $11.25

17  and $12.75 per hour and was paid overtime wages in those instances when he worked more

18  than 8 hours in a day or 40 hours in a work week.  *Id.*  In August 2010, Thio was promoted

19  from a Sushi Chef to a Sushi Team Leader.  *Id.*  In his capacity as a Sushi Team Leader,

20  Thio was paid flat biweekly wages of $1,423.08, regardless of the number of hours he

21  worked in a given day and/or week.  *Id.*  As a Sushi Team Leader, Thio was not paid

22  overtime wages regardless of the number of hours he worked, nor was he provided with any

23  10-minute rest breaks or 30-minute unpaid meal breaks.  *Id.*; Dkt. No. 38 ¶ 4.

24      Plaintiff Tju Tjin Liem worked for Genji from July 2009 through August 2012.  Dkt.

25  No. 5-1 ¶ 10.  At Genji, Liem worked as both a Sushi Chef and a Sushi Team Leader.  *Id.*

26  In her capacity as a Sushi Chef, she worked at Whole Foods Markets in Sarasota, Florida.

27  *Id.*  In the summer of 2010, Liem was promoted to Sushi Team Leader of the Sarasota store.

28  *Id.*  Shortly thereafter, Liem was approached to transfer to northern California in order to

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

assist Genji in opening up a number of new stores in California.  *Id.*  In September 2010,

Liem moved to California, where she worked for eight different Whole Foods Markets.  *Id.*

In her capacity as a Sushi Team Leader, Liem worked approximately 50 or more hours per

week but she was paid flat biweekly wages regardless of the number of hours she worked in

a given day and/or week.  *Id.* ¶ 12.  As a Sushi Team Leader, Liem was not paid overtime

wages regardless of the number of hours she worked, nor was she provided with meal and

rest breaks.  *Id.*; Dkt. No. 38 ¶ 5.

In their capacity as Sushi Team Leaders, Thio and Liem were responsible for largely

the same tasks as their fellow Sushi Chefs.  Dkt. No. 5-1 ¶¶ 7, 11.  As Sushi Team Leaders,

Thio and Liem were responsible for the additional tasks of ordering on a weekly basis fish,

vegetables and various supplies for the store in which they worked, conducting monthly

inventory, and preparing and posting the weekly schedule which was reviewed and

approved by the District Manager.  Dkt. No. 38 ¶¶ 4-5.  As Sushi Team Leaders, Thio and

Liem, however, did not do any other managing, disciplining, interviewing, hiring, firing or

any other tasks that fall within the exemptions set forth under the applicable Wage Order.

Dkt. No. 5-1 ¶¶ 7, 11; *see also* Dkt. Nos. 41-5, 41-6.

Plaintiff Denny Wijaya worked for Genji from November 2010 through August 2012.

Dkt. No. 5-1 ¶ 13.  Throughout the tenure of his employment, Wijaya worked as a Sushi

Chef at the Whole Foods Market in San Jose, California.  *Id.*  As a Sushi Chef, Wijaya's job

responsibilities included making sushi, cooking and cleaning.  Wijaya worked

approximately 40 to 50 or more hours per week.  *Id.*; *see also* Dkt. No. 41-7.

**B.   Procedural History**

Plaintiffs commenced this action on November 9, 2012.  Dkt. No. 1.  In the operative

First Amended Complaint, plaintiffs assert causes of action for: (1) failure to pay minimum

wage and overtime compensation under California Labor Code §§ 510 and 1194; (2) failure

to provide accurate itemized wage statements under California Labor Code § 226; (3)

failure to pay minimum wage and overtime compensation under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 216(b); (4) failure to provide adequate rest periods under

California Labor Code § 226.7, and IWC Wage Order 8; (5) failure to provide adequate meal periods under California Labor Code §§ 226.7, 512 and IWC Wage Order 8; (6) continuing wages under California Labor Code § 203; (7) breach of contract arising out of failure to pay bonuses; (8) restitution and injunctive relief under California Business and Professions Code §§ 17200 *et seq.*; (9) wrongful termination in violation of public policy by plaintiff Wijaya only; (10) for discrimination, harassment, wrongful termination in violation of California Fair Employment and Housing Act, California Government Code §§ 12940 *et seq.* by plaintiff Wijaya only; and (11) for civil penalties under the Private Attorneys General Act ("PAGA"), California Labor Code § 2698. Dkt. No. 5-1.

Plaintiffs brought this case as a "California, statewide class action on behalf of all individuals who, at any time during the four years preceding the filing of the original Complaint, through the date of the filing of a motion for class certification, were or have been employed by Genji, Inc., Genji Retail Support, Inc. and/or Genji LLC in California." *Id.* ¶¶ 20, 46. The case was also brought as a collective action under the FLSA on behalf of "all individuals who, at any time during the three years preceding the filing of this Complaint, were or have been employed as Sushi Team Leaders by Defendants Genji Retail Support, Inc. and/or Genji LLC in the United States." *Id.* ¶¶ 20, 66.

The parties engaged in discovery involving the exchange of over 6500 documents and additional payroll data. Dkt. No. 38 ¶ 40. As part of the discovery exchange, Genji provided the timecard data for 90 randomly selected putative class/collective action members, including the time records for 37 California Sushi Chefs, 20 California Sushi Team Leaders and 33 non-California Sushi Team Leaders. Dkt. No. 41-3 ¶ 6. Plaintiffs' counsel represent that they conducted a thorough investigation into the facts of this case including by interviewing class members, reviewing hundreds of pages of relevant documents such as policy documents, researching the applicable law and potential defenses, and reviewing payroll data and time records for what counsel's expert indicated was a significant random sample of the class members. *Id.* ¶ 8.

On July 10, 2013, the parties participated in a full-day mediation session facilitated by

Jeffrey Ross, a mediator experienced in wage and hour class actions. Dkt. Nos. 38 ¶ 42; 41-3 ¶ 7. As a result of the mediation, the parties entered into a settlement resolving the entire case. Dkt. Nos. 27; 38 ¶¶ 16, 42-43.

In November 2013, plaintiffs filed an unopposed motion seeking a preliminary approval of the settlement. Dkt. No. 37. The Court held a hearing at which no objectors appeared.

**C.   Jurisdiction**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiffs seek relief for violations of the FLSA, 29 U.S.C. § 203. *See* Dkt. No. 5-1 ¶¶ 2, 84-87. The Court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367. All parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. Nos. 15, 16.

**D.   Overview of the Settlement Agreement**

The settlement agreement requires Genji to pay up to $1,250,000 in cash ("total settlement amount"). Dkt. Nos. 41-3 ¶ 18; 38 ¶ 17. For purposes of the settlement, plaintiffs have proposed three subclasses which will receive distribution of $1,100,000 to be paid by Genji to settle the claims of the Rule 23 Class ("California payment"). Dkt. Nos. 41-3 ¶¶ 16, 28; 38 ¶ 17. In addition, up to $150,000 will be distributed to individuals who choose to opt in to a FLSA collective action ("FLSA payment"). Dkt. No. 41-3 ¶ 17. The following is a summary of the proposed structure for the overall distribution of the total settlement amount:

- ▪    Total settlement amount $1,250,000
- ▪    Attorneys' fees (not to exceed) $375,000
- ▪    Attorneys' costs (not to exceed) $20,000
- ▪    Plaintiffs' incentive awards (not to exceed) $15,000
- ▪    Costs of claims administration (not to exceed) $18,000
- ▪    PAGA payment $10,000
- ▪    Net settlement amount $812,000

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

5

1   ▪   FLSA possible payments $150,000

2   ▪   Section 203 subclass $40,000

3   ▪   Sushi Team Leader subclass $311,000

4   ▪   All Employees (Sushi Chef/Sushi Team Leader) subclass $311,000

5   Dkt. No. 38 ¶ 17.

6   The key provisions of the settlement agreement are summarized in more detail below.

7   **1.   Class Definition**

8   For purposes of the settlement, plaintiffs request that the Court certify a class under

9   Federal Rule of Civil Procedure 23 comprising of "[a]ll individuals employed within

10   California as a Sushi Team Leader or Sushi Chef at any time from November 9, 2008

11   through the date of Preliminary Approval."  Dkt. No. 41-3 ¶ 11.  Additionally, plaintiffs

12   request for settlement purposes that the Court certify a collective action pursuant to Section

13   216(b) of the FLSA comprising of "[a]ll individuals employed within the United States as a

14   Sushi Team Leader at any time from November 9, 2010 through the date of Preliminary

15   Approval."  *Id.* ¶ 12.

16   Plaintiffs further request that Thio, Liem, and Wijaya be appointed as class

17   representatives for the Rule 23 class and that Thio and Liem be appointed as class

18   representatives for the collective action class.  *Id.* ¶ 13.

19   Plaintiffs request that Alan Harris and Priya Mohan, Harris & Ruble, and David S.

20   Harris, North Bay Law Group, be appointed as class counsel for the settlement classes.

21   Dkt. No. 41-3 ¶ 14.

22   **2.   Payment to the Settlement Class**

23   The $1,250,000 total settlement amount consists of two separate funds: the California

24   payment and the FLSA payment.  The total settlement amount will be used to pay: (1)

25   attorneys' fees and costs of class counsel; (2) costs of settlement administration; (3)

26   incentive payments to the class representatives; and (4) the PAGA payment, all subject to

27   approval by the Court.  Dkt. No. 41-3 ¶ 20.

28

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

### a.   Proposed Distribution of the California Payment

The $1,100,000 California payment is to be shared by three separate subclasses: (1) California Sushi Team Leaders, (2) all California employees (both California Sushi Team Leaders and California Sushi Chefs), and (3) all former California employees.

The settlement agreement provides that $40,000 of the California payment will be used to create the "203 Fund," which will be split evenly among the Rule 23 claimants whose employment terminated prior to the date of preliminary approval of the settlement. Dkt. No. 41-3 ¶ 28(b).

The balance of the California payment remaining after deduction of the 203 Fund will be split evenly into two funds – the "California STL Fund" and the "California Employee Fund." *Id.* ¶ 28(c). The settlement agreement further provides that the California STL Fund will be allocated pro-rata based upon the number of hours of overtime worked between the dates of November 9, 2008, and January 7, 2013. *Id.* ¶ 28(d). The California Employee Fund will be allocated pro-rata based upon the number of days worked for Genji in a California store between the dates of November 9, 2008, and the date of preliminary approval. *Id.* ¶ 28(e). Each Rule 23 claimant will be entitled to receive a payment from any of the three funds for which he or she qualifies. *Id.* ¶ 28(f).

If less than one hundred percent of the California payment is claimed by Rule 23 claimants, the sum remaining will be used to pay Genji's portion of the payroll taxes owed on the payments made to the Rule 23 claimants. *Id.* ¶ 28(h). If any portion of the California payment remains after deduction of Genji's payroll taxes, the parties are to instruct the claims administrator to increase the amount to be distributed to the Rule 23 claimants on a pro rata basis so that one hundred percent of the California payment is distributed. *Id.* ¶ 28(i).

Thus, after payment of Genji's payroll taxes, all of the $1,100,000 California payment will be distributed to class members. *Id.* ¶ 16. According to the settlement agreement, any funds remaining with the claims administrator due to the failure of class members to negotiate their checks will be distributed to the State of California Labor and Workforce

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

7

1   Development Agency ("LWDA") as the cy pres recipient. *Id.* ¶ 60; Dkt. No. 38 ¶ 48.

2         **b.**    **Proposed Distribution of the FLSA Payment**

3        The settlement agreement further provides that the $150,000 FLSA payment will be

4   allocated pro-rata among the collective action claimants based upon the number of hours of

5   overtime worked as a Sushi Team Leader between the dates of November 9, 2010 and

6   October 27, 2013, as compared to the total number of hours of overtime worked by the

7   members of the proposed class during that time period. Dkt. No. 41-3 ¶ 29(a). Any

8   unclaimed portion of the FLSA payment will remain with Genji and will not be disbursed as

9   part of the settlement. *Id.* ¶ 17.

10       **3.**    **Incentive Awards and Attorneys' Fees and Costs**

11        Under the terms of the settlement agreement, class counsel will apply for incentive

12   awards to plaintiffs of $5,000, each, for their efforts in this case, which will be in addition to

13   any payment plaintiffs may otherwise receive as class members. Dkt. No. 41-3 ¶ 25. In

14   addition, the settlement provides that class counsel will apply to the Court for an award of

15   attorneys' fees and costs, which will be scheduled for determination at the final fairness and

16   approval hearing. *Id.* ¶ 22. Genji has agreed to not oppose an application by class counsel

17   for a fee which does not exceed 30% of the total settlement amount less any amount not

18   claimed by FLSA collective action claimants. *Id.* The requested incentive awards and

19   attorneys' fees and costs will be subject to Court approval. *Id.* If lesser amounts are

20   awarded, the difference will be included in the net settlement fund. *Id.* ¶ 20.

21       **4.**    **Injunctive Relief**

22        Plaintiffs represent that the settlement contains "implicit injunctive relief" in that this

23   suit seems to have been the catalyst for Genji's action reclassifying all its California Sushi

24   Team Leaders from exempt to non-exempt status on January 7, 2013. Dkt. No. 38 ¶¶ 21,

25   45. As a result, beginning in January 2013, Genji began paying California Sushi Team

26   Leaders for all hours worked, which includes the payment of overtime wages. *Id.* ¶ 21.

27   Similarly, since early October 2013, non-California Sushi Team Leaders have been paid

28   overtime by Genji. *Id.* The additional costs of paying overtime to Sushi Team Leaders, as

1   implemented during 2013, are not charged against the settlement funds.  *Id.*

2   **5.    Release of Claims**

3   The settlement agreement provides that Rule 23 class members who fail to submit a

4   timely exclusion form release "any and all claims, from November 9, 2008 through the date

5   of the Preliminary Approval Order, against Released Parties that were raised or that could

6   have been raised under California law based upon the facts set forth in the First Amended

7   Complaint."  Dkt. No. 41-3 ¶¶ 61-62.

8   Further, under the settlement agreement, all individuals in the proposed collective

9   action class who timely file a claim form and thereby opt in to the settlement release "any

10  and all claims, from November 9, 2010 through the date of the Preliminary Approval Order,

11  against Released Parties that were raised or that could have been raised under the Fair Labor

12  Standards Act based upon the facts set forth in the First Amended Complaint."  *Id.* ¶¶ 64-

13  65.

14  **6.    Class Notice**

15  The settlement agreement calls for the appointment of a claims administrator to

16  deliver the class notice and claim form to the class.  Dkt. No. 41-3 ¶¶ 32-33.  Within 20

17  calendar days after preliminary approval is granted, Genji will provide to the claims

18  administrator a database with the class members' name, Social Security Number, last

19  known address, and telephone number, as well as the payroll information necessary to

20  determine each individual's estimated settlement payment.  *Id.* ¶¶ 32, 34.

21  The settlement agreement provides that, within 30 calendar days after the claims

22  administrator receives that database, the claims administrator will mail to all class members,

23  via First Class United States Mail, postage prepaid, a copy of the Court approved class

24  notice, claim form, and (for the proposed members of the Rule 23 class only) exclusion

25  form.  *Id.* ¶ 33.  The settlement agreement further provides that the claims administrator will

26  use standard devices, including the National Change of Address database or equivalent, to

27  obtain forwarding addresses prior to mailing and will use appropriate skip tracing to take

28  appropriate steps to maximize the probability that the notice and other materials will be

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

9

1   received by all class members. *Id.* ¶ 35.

2          The settlement agreement provides that, in order for a class member to be eligible to

3   participate in the settlement and to receive any settlement payments, the class member must

4   submit a valid, fully executed claim form (along with all required documentation) to the

5   claims administrator, postmarked no later than 45 calendar days after the initial date of

6   mailing of the class notice and claim form. *Id.* ¶ 40.  The class members will have 45

7   calendar days after the date on which the claims administrator mails the notice to object to

8   the settlement by serving on the claims administrator a written objection to the settlement.

9   *Id.* ¶ 42.

10          In order for a Rule 23 class member to request exclusion from the settlement, he or

11  she must submit to the claims administrator an exclusion form, postmarked no later than 45

12  calendar days after the date of mailing of the class notice, claim form and exclusion form.

13  *Id.* ¶ 46.  Any Rule 23 class member who does not properly and timely submit an exclusion

14  form will be bound by all terms and conditions of the settlement, including its release of

15  claims, if the settlement is approved by the Court, regardless of whether he or she has

16  objected to the settlement or submitted a completed claim form. *Id.* ¶ 47.

17                              **III. DISCUSSION**

18  **A.    Preliminary Approval of the Settlement**

19          Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement by

20  a certified class.  Although there is a "strong judicial policy that favors settlements,

21  particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska*

22  *P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the

23  unnamed members of the class from unjust or unfair settlements affecting their rights," *In re*

24  *Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, a settlement

25  should only be approved if it is "fundamentally fair, adequate, and reasonable." *Torrisi v.*

26  *Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks

27  omitted).  In determining whether the proposed settlement meets this standard, the Court

28  does not have the ability "to delete, modify, or substitute certain provisions . . . . The

settlement must stand or fall in its entirety." *Id.*  Due to the dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

Additionally, settlements of collective action claims under the FLSA also require court approval. *Jones v. Agilysys, Inc.*, No. 12-cv-03516 SBA, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013).  Because an employee's claims under the FLSA are nonwaivable, they may not be settled without supervision of either the Secretary of Labor or a district court. *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, *1 (N.D. Cal. Aug. 8, 2007) (citing *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)).  A district court presented with a proposed settlement of FLSA claims "must determine whether the settlement is a fair and reasonable resolution of a *bona fide* dispute. . . . 'If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1355); *see also McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-cv-5243 SBA,

1   2012 WL 6629608, *2 (N.D. Cal. Dec. 19, 2012).

2        The Court reviews the preliminary approval factors in turn.

3        **1.       The Settlement Process**

4        The Court first considers the means by which the parties reached their settlement.

5   Here, the settlement was reached after counsel conducted extensive investigation and

6   discovery into the facts of this case, which included the review of policy documents, payroll

7   data and time records.  Settlement negotiations occurred at arm's length with the assistance

8   of a mediator experienced in wage and hour class actions.  The settlement thus appears to be

9   the product of serious, informed, non-collusive negotiations.  Accordingly, the process by

10  which the parties reached their settlement weighs in favor of preliminary approval.

11       **2.       The Presence of Obvious Deficiencies**

12       The Court must next analyze whether there are obvious deficiencies in the settlement

13  agreement.  Having reviewed the motion for preliminary approval and supporting materials,

14  and considered the arguments of counsel at the hearing, the Court finds no obvious

15  deficiencies in the settlement agreement.

16       The Court notes that, while the scope of the release in the proposed settlement is

17  broad, it is acceptable because the claims released are limited to those based upon the facts

18  set forth in the First Amended Complaint.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590

19  (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related

20  claim in the future even though the claim was not presented and might not have been

21  presentable in the class action, but only where the released claim is based on the identical

22  factual predicate as that underlying the claims in the settled class action.") (internal

23  quotation marks and citations omitted); *Custom LED, LLC v. eBay, Inc*, No. 12-cv-00350

24  JST, 2013 WL 6114379, at *4, 7 (N.D. Cal. Nov. 20, 2013) (scope of release in class action

25  settlement was not improperly broad where it released all claims, "known or unknown,"

26  "arising out of or relating in any way to any of the legal, factual, or other allegations made

27  in the Action, or any legal theories that could have been raised based on the allegations of

28  the Action."); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D. Cal.

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

2011) (granting preliminary approval of class action settlement where released claims were "based on the facts alleged" in the complaint and thus appropriately tracked the breadth of plaintiffs' allegations in the action and the settlement did not release "unrelated claims").

Accordingly, the lack of obvious deficiencies also weighs in favor of granting preliminary approval of the proposed settlement.

### 3. Preferential Treatment

The third factor the Court considers is whether the settlement agreement provides preferential treatment to any class member.

According to the settlement agreement here, the FLSA payment will be allocated pro rata among the collective action claimants based upon the number of hours of overtime worked. Further, each Rule 23 claimant will be entitled to receive a payment from any of the three funds for which he or she qualifies. Of those funds, the 203 Fund will be split evenly among former employees, the California STL Fund will be allocated pro rata among the overtime class based upon the number of hours of overtime worked, and the California Employee Fund will be allocated pro rata among the meal and rest break class based upon the number of days worked. The proposed distribution of the settlement funds does not appear to grant undue preferential treatment to any class members.

While the settlement agreement authorizes class counsel to apply for incentive awards to plaintiffs of $5,000, these incentive awards, should the Court finally approve them, do not render the settlement unfair, since "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). The Court finds no indication of unfair treatment to certain members of the class, and therefore this factor supports preliminary approval.

### 4. Whether the Settlement Falls Within the Range of Possible Approval

Finally, the Court must determine whether the proposed settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected

recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at
*9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal.
2009)).  To determine whether an agreement is fundamentally fair, adequate, and
reasonable, the Court may preview the factors that ultimately inform final approval: "[1] the
strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further
litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount
offered in settlement; [5] the extent of discovery completed, and the stage of the
proceedings; [6] the experience and views of counsel; [7] the presence of a governmental
participant; and [8] the reaction of the class members to the proposed settlement." *Id.* at *9
(citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  As part of this
assessment, the Court must "compare the value of the settlement against the expected
recovery at trial" by estimating "the maximum amount of damages recoverable in a
successful litigation and compare that with the settlement amount." *Id.* at *11 (internal
quotation marks omitted).  The Court will address first the value of the settlement.

### a.    The Value of the Payment to the Rule 23 Class

Plaintiffs represent that, according to defendants' records, the California payment will
be shared by approximately 420 class members, including some 216 former employees.  If
the Court awards all requested fees and costs, the California subclasses will split at least
$662,000.

### i.    Sushi Team Leader Subclass

This subclass addresses plaintiffs' contention that Genji failed to pay overtime wages
to California Sushi Team Leaders in violation of California law.  Under California law,
"[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in
any one workweek . . . shall be compensated at the rate of no less than one and one-half
times the regular rate of pay for an employee," and "[a]ny work in excess of 12 hours in one
day shall be compensated at the rate of no less than twice the regular rate of pay for an
employee." Cal. Lab. Code § 510(a).  Plaintiffs allege that the magnitude of the short
payments to class members, including the Sushi Team Leaders, may be readily computed as

1  they were required to use time clocks to record their attendance at work.  Dkt. No. 5-1 at 14.

2  Based on the recorded total number of overtime worked and an average hourly rate,

3  plaintiffs calculate the maximum recovery as approximately $408,262 in overtime wages.

4  Dkt. No. 38 ¶ 18.  Plaintiffs estimate that, assuming a 50% participation rate, the California

5  Sushi Team Leaders' overtime claims will be paid in full by the $311,000 fund.  *Id.*

6              **ii.**      **All California Employees Subclass**

7       This subclass addresses plaintiffs' contention that Genji failed to pay California

8  employees (Sushi Team Leaders and Sushi Chefs) appropriate wages on account of missed

9  meal periods and rest breaks.  Under the California Labor Code, "[i]f an employer fails to

10 provide an employee a meal period or rest period in accordance with an applicable order of

11 the [IWC], the employer shall pay the employee one additional hour of pay at the

12 employee's regular rate of compensation for each work day that the meal or rest period

13 [wa]s not provided."  Cal. Lab. Code § 226.7(b) (2000).

14      Plaintiffs represent that, while the employee handbook provides that the workers may

15 take meal breaks after 4 hours of work, and the information obtained from Genji reveals

16 that compliant breaks were frequently taken by the Sushi Chefs, the work rules made no

17 provision whatsoever for rest breaks.  Dkt. No. 38 ¶¶ 22.  According to the information

18 provided by Genji, plaintiffs estimate that this subclass worked for a total of approximately

19 100,000 days during the relevant time period, with the Sushi Chefs accounting for the

20 majority of that time.  *Id.* ¶¶ 22, 35.  By multiplying the total number of days worked by the

21 approximate weighted hourly rate for the Sushi Team Leaders and Sushi Chefs, plaintiffs

22 calculate that the total rest break damages would be approximately $1,259,000.  *Id.*

23 Plaintiffs estimate that, assuming a 50% participation rate, the projected $311,000 fund

24 would pay for about half of the maximum recovery, with each day having a "value" of

25 about $6.22.  *Id.*  Accordingly, one who worked for a two hundred days in a year would

26 receive a payment of about $1,244 (200 days x $6.22 = $1,244) and an employee who

27 worked throughout the entire class period could receive a payment approaching $6,000.  *Id.*

28

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

### iii.   Derivative Claims

Plaintiffs' First Amended Complaint also asserts three derivative class-wide claims stemming from Genji's alleged failure to pay proper overtime and provide proper breaks to California employees.  First, plaintiffs assert a derivative penalty claim for continuing wages under sections 201 through 203 of the California Labor Code.  Plaintiffs contend that as continuing wages are treated as penalties, and very likely could have been discounted to zero, claims for § 203 penalties should be discounted so that each former employee who submits a claim will receive a modest payment.  Dkt. No. 38 ¶¶ 79-80.  Under the proposed settlement, those of the 216 former employees who submit claim forms will take an equal share of the $40,000 fund established to resolve claims under § 203.  Plaintiffs estimate that, if every former California employee participates in the settlement, each will receive approximately $185 for California Labor Code § 203 penalties; if 50% of the former California employees submit claims, each will receive approximately $370 on account of Genji's failure to pay all wages at termination.  Dkt. No. 38 ¶ 38.

In addition, plaintiffs assert a wage statement claim under § 226 of the California Labor Code (requiring employers to provide their employees with "accurate itemized statement[s]" and imposing damages for a "knowing and intentional" violation of this requirement).  Plaintiffs also bring a derivative claim seeking restitution of unpaid overtime and missed-breaks wages for themselves and all similarly situated employees under Business and Professions Code § 17200 *et seq.* simultaneously with their claims under the Labor Code.  The settlement does not provide for a separate payment on account of the § 226 and § 17200 derivative claims.  Class counsel argue that the potential claims for penalties under § 226 of the California Labor Code should be discounted entirely as other payments in the proposed distribution may be deemed to be a proxy for a small payment on account of this penalty.  Dkt. No. 38 ¶ 80.  Counsel submit that the derivative wage statement claim arguably does not give rise to cognizable damages.  Dkt. No. 37 at 18-19.  Counsel further assert that, since the defective wage statement violation and the violation arising from the failure to pay all wages when the employee was fired, laid off or quit are by

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

1  their nature penalties, they are appropriately discounted enabling the California payments to

2  be distributed on account of unpaid overtime wage, meal and rest break premiums.  Dkt.

3  No. 38 ¶¶ 79-80.

4       Finally, plaintiffs assert a PAGA civil penalties claim under § 2698 *et seq.* of the

5  California Labor Code.  PAGA permits "an aggrieved employee" to seek civil penalties "on

6  behalf of himself or herself and other current or former employees" for violations of

7  sections 201, 202, 226, 510, and 512 of the Labor Code, which penalties are to be split

8  between the aggrieved employees and the LWDA.  *See* Cal. Lab. Code § 2699(a), (i).

9  Under the settlement, in satisfaction of the PAGA claim, the LWDA will receive a

10  minimum payment of $10,000.

### b.  The Value of the FLSA Payment

12       The FLSA provides that "no employer shall employ any of his employees . . . for a

13  workweek longer than forty hours unless such employee receives compensation for his

14  employment in excess of the hours above specified at a rate of not less than one and one-

15  half times the regular rate at which he is employed."  29 U.S.C. § 207(a).

16       The proposed settlement of the FLSA collective action here allocates a settlement

17  fund of up to $150,000 to 41 California Sushi Team Leaders and 189 non-California Sushi

18  Team Leaders.  Dkt. No. 38 ¶ 3.  Plaintiffs estimate that, if all of the members of this class

19  opt in, each individual would receive an average gross FLSA recovery of approximately

20  $650 each.  *Id.*  Individuals who claim against the $150,000 fund will receive a gross

21  recovery of approximately $1.50 per hour for recorded overtime services.  *Id.*

### c.  The Settlement Value Supports Preliminary Approval.

23       In summary, assuming a 50% participation rate, the $1,250,000 total settlement

24  payment will provide all misclassified claimants employed by Genji in California with an

25  estimated approximate payment in full of their unpaid overtime wages and about half of the

26  maximum recovery payments for missed meal break and rest periods, and will provide a

27  modest payment under § 203 of the California Labor Code to former California employees

28  who submit claims.  *See* Dkt. No. 38 ¶ 38.  While the proposed class notice explains that the

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

1    "California Employee Subclass" addresses plaintiffs' contract claim in addition to the meal

2    and rest break claims, plaintiffs' motion for preliminary approval does not explain what part

3    of the settlement amount is allocated to the contract claim or why the allocation is fair.  *See*

4    Dkt. No. 41-1 at 4.  Despite these concerns, the overall settlement appears to provide for a

5    fair amount of recovery considering other class settlement awards receiving approval.  *See*

6    *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of

7    one-sixth of the potential recovery to be fair under the circumstances); *Greko v. Diesel*

8    *U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24

9    percent); *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068 MMC, 2007 WL 2216862, at *4

10   (N.D. Cal. Jan. 26, 2007) (25 to 35 percent).

11              **d.      The Remaining Factors Weigh in Favor of Preliminary Approval.**

12            Turning to the other factors informing settlement approval, such as the strength of

13   plaintiffs' case, the extent of discovery completed at this stage of the proceedings, the risk

14   of maintaining class action status, and the risk, expense, and likely duration of the litigation,

15   the Court finds that all weigh in favor of preliminary approval of the proposed settlement

16   agreement.  Plaintiffs assert that they faced a significant amount of uncertainty if they were

17   to go forward with this litigation due to the disputed nature of the legal issues in this case,

18   namely whether Genji improperly misclassified in-store "managers" as exempt under state

19   and federal laws and systematically deprived its employees who worked at many different

20   in-store locations with proper meal periods and rest breaks.  Dkt. No. 38 ¶¶ 66-67.

21   Furthermore, plaintiffs assert that securing certification of a statewide class with operations

22   at several locations, in several different cities, is not a result which one could predict with

23   certitude.  *Id.* ¶ 68.  Genji argued that proper meal and rest breaks were always provided to

24   employees (and taken by them), and that any deviations from that practice were rare, so that

25   a store by store analysis would be required to establish any liability and that class

26   certification would be unlikely.  *Id.* ¶ 32.  Plaintiffs thus assert that the class recovery on

27   account of missed meal and rest breaks is discounted due to the fact of the difficulty in

28   achieving and maintaining certification of a meal and rest break class or classes.  *Id.* ¶ 32.

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

1    Furthermore, plaintiffs represent that the parties have conducted extensive discovery

2    regarding each of the relevant issues in the case, and that class counsel consulted with an

3    expert on certification and damages issues in this case. *Id.* ¶ 70.  Thus, when class counsel

4    negotiated the settlement, they had sufficient information to adequately assess the strengths

5    and weaknesses of the case, aided by their experience in litigating wage and hour class

6    actions. *Id.* ¶¶ 70-76.  As to the reaction of the class, plaintiffs represent that, at this stage

7    of the litigation, no "tag-along" cases have been filed, with "new" counsel questioning

8    whether the settlement is sufficient. *Id.* ¶ 77.

9         Additionally, the settlement provides for some FLSA overtime payments to Sushi

10   Team Leaders nationwide.  This case involves disputed issues of FLSA coverage and

11   potential liability, which constitutes a bona fide dispute. *See* Dkt. Nos. 5-1, 7.  Although

12   plaintiffs have provided limited information regarding the value of the settlement of the

13   FLSA claim in light of the maximum recovery, at this preliminary review stage the

14   settlement appears to reflect a fair and reasonable compromise and falls within the range of

15   possible initial approval based on the strengths of plaintiffs' case and the risks and expense

16   of continued litigation.  At the final approval hearing, however, the parties must be prepared

17   to present specific evidence that would allow the Court to assess the value of the settlement

18   payments in light of the maximum recovery. *See Harris*, 2011 WL 1627973, at *13

19   (initially approving settlement but noting "if the claims rate is low and the aggregate

20   recovery paltry, the Court will likely refuse to [finally] approve the settlement.").

21        Because the balance of the factors considered by the Court weighs in favor of

22   preliminary approval, plaintiffs' motion for preliminary approval of the settlement is

23   granted.

24   **B.    Conditional Certification of the Class and Collective Action**

25        **1.    The Rule 23 Class**

26         Class certification requires that: (1) the class be so numerous that joinder of all

27   members individually is 'impracticable;' (2) there are questions of law or fact common to

28   the class; (3) the claims or defenses of the class representative must be typical of the claims

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

or defenses of the class; and (4) the person representing the class must be able fairly and adequately to protect the interests of all members of the class.  Fed. R. Civ. P. 23(a); *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003).  In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b).  Here, the parties assert that the action is maintainable under Rule 23(b)(3) because questions of law or fact common to class members predominate over any question affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b); *Hanlon*, 150 F.3d at 1022.

The proposed settlement class appears to meet the requirements for certification under Rule 23(a).  First, there are 189 potential collective action members, 41 total class members in the California Sushi Team Leader subclass, and 380 total class members in the group of California Sushi Chefs.  Dkt. No. 38 ¶ 11.  The total number of potential class members is over 400 employees, of which 216 are former employees.  *Id.*  The potential class members are thus sufficiently numerous that joinder of all members would be impracticable.  Second, there are questions of fact and law common to all class members, such as the legality of Genji's meal break policy and its lack of any written rest break policy, as well as whether Genji misclassified its Sushi Team Leaders as exempt nationwide.  *See id.* ¶¶ 29, 66.  Third, plaintiffs represent that the fact-pattern underlying plaintiffs' claims is similar, if not identical, to that for other class members.  *See* Dkt. Nos. 37 at 27; 38 ¶¶ 4-6.  Two of the plaintiffs were employed by Genji as Sushi Team Leaders, and two worked as Sushi Chefs in California.  *Id.*  Fourth, plaintiffs represent that there are no conflicts of interest between them and the class members, and there are no perceived conflicts with plaintiffs' counsel.  *See* Dkt. Nos. 37 at 27; 38 ¶ 72; 41-5; 41-6; 41-7.

Further, the proposed class meets the requirements of Rule 23(b).  Plaintiffs' challenges to the legality of Genji's meal break policy, the lack of any written rest break policy, and Genji's misclassification of its Sushi Team Leaders as exempt nationwide are subject to common resolution.  These legal questions represent a significant aspect of the

case, and based on the record before the Court, do not appear to be outweighed by any questions affecting only individual members. *See Hanlon*, 150 F.3d at 1022 ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)).

Additionally, considerations of judicial economy favor litigating this case as a class action. Since this case involves multiple claims for relatively small sums, a class action is superior to an alternative method for adjudicating the parties' claims. *See Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1154, 1163 (9th Cir. 2001) ("[I]f plaintiffs cannot proceed as a class, some-perhaps most-will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."). According to the record provided, no potential class member has expressed a desire to proceed independently and no unusual obstacles have appeared that would make managing the class particularly difficult.

The Court finds that this action is maintainable under Federal Rule of Civil Procedure 23(a) and (b), and therefore, conditionally certifies the proposed classes for purposes of settlement.

### 2.    The Collective Action

The Court next addresses whether it is appropriate to certify a collective action under the FLSA. Section 216(b) of the FLSA allows employees to represent similarly situated employees in an action against their employer for failure to pay wages owed. 29 U.S.C. § 216(b). But unlike class actions brought under Federal Rule of Procedure 23, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party . . . ." *See id.*; *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (the FLSA requires that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

1  about whether to participate.").

2       Neither the FLSA, nor the Ninth Circuit, has defined the term "similarly situated" for

3  purposes of certifying a collective action. *Brewer v. Gen. Nutrition Corp.*, No. 11-cv-03587

4  YGR, 2013 WL 100195, at *2 (N.D. Cal. Jan. 7, 2013). Certification of a collective action

5  under the FLSA typically proceeds in two-stages. *See id.; Harris v. Vector Mktg. Corp.*,

6  716 F. Supp. 2d 835, 837 (N.D. Cal. 2010). At the initial "notice stage," the Court

7  determines whether the plaintiffs are "similarly situated," deciding whether a collective

8  action should be certified for the purpose of sending notice of the action to potential class

9  members. *Brewer*, 2013 WL 100195, at *2. At this initial stage, plaintiffs can satisfy their

10 burden to show that they are "similarly situated" by making substantial allegations,

11 supported by declarations or discovery, that "the putative class members were together the

12 victims of a single decision, policy, or plan." *Id.*, at *3 (quoting *Thiessen v. Gen. Elec. Cap.*

13 *Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). This determination is made based on a fairly

14 lenient standard, and typically results in a conditional certification. *Brewer*, 2013 WL

15 100195, at *3. "The requisite showing of similarity of claims under the FLSA is

16 considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of

17 Civil Procedure. All that need be shown by the plaintiff is that some identifiable factual or

18 legal nexus binds together the various claims of the class members in a way that hearing the

19 claims together promotes judicial efficiency and comports with the broad remedial policies

20 underlying the FLSA." *Hill v. RL Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal.

21 2010) (quoting *Wertheim v. Arizona*, No. 92-cv-453, 1993 WL 603552, at *1 (D. Ariz. Sept.

22 30, 1993)); *see also Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal.

23 2010).

24      The second determination is made at the conclusion of discovery, usually upon a

25 motion for decertification by the defendant, when courts apply a stricter standard for

26 similarly situated employees and review several factors, including whether individual

27 plaintiffs' claims involve disparate factual or employment settings; the various defenses

28 available to the defendant which appear to be individual to each plaintiff; as well as fairness

1    and procedural considerations.  *Brewer*, 2013 WL 100195, at \*3.

2        Here, the Court finds that plaintiffs have satisfied the lenient standard for conditional

3    certification.  The First Amended Complaint alleges that plaintiffs Thio and Liem and the

4    collective action members were employed as Sushi Team Leaders by Genji, and that they

5    were not paid their overtime and minimum wages for all hours worked in violation of the

6    FLSA.  Dkt. No. 5-1 ¶ 67.  The complaint further alleges that, as Sushi Team Leaders, Thio

7    and Liem were not paid overtime wages regardless of the number of hours they worked

8    Dkt. No. 5-1 ¶¶ 8, 12.  Plaintiffs Thio and Liem provided sworn declarations in support of

9    the allegations in the complaint.  Dkt. Nos. 41-5, 41-6.  Plaintiffs' counsel also submitted a

10   declaration stating that, for the overwhelming majority of the class period, Genji did not pay

11   any of its California Sushi Team Leaders for all hours worked in violation of California

12   overtime laws, or its non-California Sushi Team Leaders for overtime hours worked in

13   excess of forty per week.  Dkt. No. 38 ¶ 21.  Plaintiffs have thus sufficiently demonstrated

14   that the potential collective action members were subject to the same policy or practice that

15   resulted in Genji's failure to pay wages as required under the FLSA.  Conditional

16   certification of this collective action is therefore warranted.

17   **C.    Class Notice**

18       The notice to be delivered to class members includes the information required by

19   Rule 23 of the Federal Rules of Civil Procedure.  Specifically, the proposed class notice

20   describes the nature of the action, the definition of the class and subclasses, and the class-

21   wide claims.  The proposed notice further explains that class members may appear through

22   an attorney and that the Court will exclude those members requesting exclusion.  The notice

23   also specifies the time requirements and manner of requesting exclusion, as well as the

24   binding effect of a class-wide judgment.  *See* Fed. R. Civ. P. 23(c)(2)(B) (stating that "[t]he

25   notice must clearly and concisely state in plain, easily understood language: (i) the nature of

26   the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses;

27   (iv) that a class member may enter an appearance through an attorney if the member so

28   desires; (v) that the court will exclude from the class any member who requests exclusion;

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT

1    (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class

2    judgment on members under Rule 23(c)(3)").

3         In addition, the notice explains that class members may object, indicates the time and

4    place of the final approval hearing, provides information regarding the attorneys' fees and

5    incentive awards to be requested by class counsel, and states that additional information

6    regarding the settlement is available through the claims administrator or class counsel,

7    whose contact information is provided in the notice.  The notice also explains that the

8    settlement fund will be allocated among several subclasses, and points employees to a

9    website that will contain additional information, including the full terms of the settlement,

10   as well as all relevant pleadings in this lawsuit.

11        The Court approves the proposed notice to the class members.  Dkt. No. 41-1.

12                                  **IV. CONCLUSION**

13        The Court grants preliminary approval of the settlement, conditionally certifies the

14   class and collective action for settlement purposes, and approves the proposed form of

15   notice.  The Court also approves the proposed class counsel, class representatives, and

16   claims administrator.  Plaintiffs' motion(s) for final approval, for incentive awards, and for

17   class counsel fees and costs must be filed no later than the date on which the claims

18   administrator mails the notice, claim form, and exclusion form to the class members.

19        The Court will hold a final approval hearing on December 3, 2014, at 1:00 p.m. in

20   Courtroom A, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco,

21   California.

22        IT IS SO ORDERED.

23        Date: August 7, 2014

24                                    _____

25                                    Nathanael M. Cousins
                                      United States Magistrate Judge

26

27

28

Case No. 12-cv-05756
ORDER GRANTING PRELIMINARY
APPROVAL OF SETTLEMENT
                                      24